IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLETA MITCHELL<br>c/o JPRowley Law PLLC<br>1701 Pennsylvania Avenue, N.W.<br>Suite 200<br>Washington, D.C.  20006<br><br>          *Plaintiff,*<br>  v.<br><br>UNITED STATES HOUSE OF REPRESENTATIVES<br>SELECT COMMITTEE TO INVESTIGATE<br>THE JANUARY 6TH ATTACK ON THE<br>UNITED STATES CAPITOL<br>Longworth House Office Building<br>Washington, D.C.  20515<br><br>BENNIE G. THOMPSON, in his official capacity as<br>Chairman of the House Select Committee to<br>Investigate the January 6th Attack<br>on the United States Capitol,<br>Longworth House Office Building<br>Washington, D.C.  20515<br><br>          Defendants. | Civil Action No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1. Plaintiff Cleta Mitchell is a United States citizen and licensed attorney who practices elections and campaign finance law. She is admitted to the Bars of several courts, including the U.S. District Court for the District of Columbia.

2. Following the Presidential election on November 3, 2020, Ms. Mitchell worked in the State of Georgia as a volunteer attorney investigating election law irregularities. Based on

the results of that investigation, she contributed to the December 4, 2020, filing by other counsel of a lawsuit styled *Donald J. Trump et al v. Brad Raffensperger, et al* (Case No. 2020-CV-343255) in the Superior Court of Fulton County. The lawsuit identified specific illegal votes and violations of Georgia's Election Code and requested, among other things, that the Court issue an injunction prohibiting the Secretary of State from appointing the slate of presidential electors due to the systemic irregularities in the contested election.

3. There was nothing unusual about Ms. Mitchell's legal work in Georgia. Since passage of the Electoral Count Act of 1887, which provides a legal avenue for members of Congress to challenge electoral votes under the Constitution, elections attorneys for both the Republican and Democrat parties routinely investigate potential violations of state law and file objections to certification of presidential electors. By way of example, Democratic lawmakers objected to several recent election outcomes, including in 2001 and 2005, and as recently as 2017 for the election of President Trump.

4. The Superior Court of Fulton County failed to appoint a judge eligible to consider the lawsuit prior to January 6, 2021, and counsel for petitioners voluntarily dismissed their legal challenge that day after the U.S. Senate certified Georgia's electors.

5. Ms. Mitchell's work as an elections attorney in Georgia was entirely lawful and consistent with her professional obligations regarding the enforcement of election integrity laws and, in that respect, was like the legal work historically done by attorneys on both sides of the political aisle.

6. Ms. Mitchell was not in Washington, D.C., at any time between November 1, 2020 and January 6, 2021, and had no involvement in, or knowledge about, the planning and organization of the Presidential rally that took place on January 6, 2021, at the White House Ellipse – let alone the attack on the Capitol that day.

7. Nonetheless, and without regard to the fact that Ms. Mitchell was engaged in lawful activities as a practicing elections attorney, the United States House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Select Committee") issued a Subpoena to AT&T seeking three full months of cellular records associated with her telephone number and account (the "Subpoena").

8. As set forth below, the Select Committee lacks the authority to obtain the records sought by the Subpoena. The Subpoena is overly broad and seeks information that is unrelated to the purposes whereby Congress established the Select Committee as set forth in House Resolution 503 ("H. Res 503"). Moreover, the Subpoena violates Ms. Mitchell's protections under the First and Fourth Amendments to the United States Constitution, as well as federal law.

9. Ms. Mitchell seeks this Court's intervention through declaratory and injunctive relief to protect her Constitutional rights, including her privacy interests in records that disclose information concerning the fact of her personal and attorney communications.

## PARTIES

10. Plaintiff Cleta Mitchell is a resident of the State of North Carolina.

11. Defendant Select Committee is a committee created by H. Res. 503 which was passed by the U.S. House of Representatives on June 30, 2021.

12. Defendant Bennie G. Thompson is a Member of the U.S. House of Representatives and the Chairman of the Select Committee. The Subpoena challenged herein was issued under his authority as Chairman of the Select Committee.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution of the United States, as well as 28 U.S.C. §§ 2201-02, which provides for declaratory relief.

14. This Court also has subject matter jurisdiction under the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq*.

15. This Court has personal jurisdiction over Chairman Thompson because he presides over the Select Committee and authorized issuance of the Subpoena to AT&T from the Select Committee's offices in Washington, D.C.

16. This Court has personal jurisdiction over the Select Committee because it is located, and functions, in Washington, D.C.

17. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to Plaintiff's claims occurred in Washington, D.C.

**RELEVANT FACTS**

18. Cleta Mitchell is a private United States citizen and licensed attorney who practices elections and campaign finance law and is admitted to the Bars of several courts, including the U.S. District Court for the District of Columbia. Ms. Mitchell is the co-founder and Chairman of the Public Interest Legal Foundation and the Senior Legal Fellow at the Conservative Partnership Institute. She has served as a member of the Advisory Board to the American Bar Association's Standing Committee on Election Law and as a member of the American Law Institute Task Force on Principles of Election Administration, which focused on disputes related to presidential elections.

19. Following the Presidential election on November 3, 2020, Ms. Mitchell spent much of her time in the State of Georgia applying her experience in election law to investigating voting irregularities in that state, which included contributing to a lawsuit that other counsel filed on December 4, 2020, and which was voluntarily dismissed on January 6, 2021, after the United States Senate confirmed the slate of Georgia's electors. Ms. Mitchell was not in Washington, D.C., at any time between November 1, 2020 and January 6, 2021 and was only

vaguely aware that a post-election rally was planned for that day. She had no involvement in the planning or organization of that rally, nor did she have any involvement in the attack on the U.S. Capitol.

20. On June 30, 2021, the United States House of Representatives adopted H. Res. 503 which created the Select Committee.[1] The Resolution, in relevant part, authorized the Select Committee:

> To investigate and report upon the facts, circumstances, and causes relating to the January 6, 2021, domestic terrorist attack upon the United States Capitol Complex … and relating to the interference with the peaceful transfer of power, including facts and causes relating to the preparedness and response [of various law enforcement agencies], as well as the influencing factors that fomented such an attack on American representative democracy while engaged in a constitutional process.

Resolution 503 also provided that the Select Committee may "issue subpoenas pursuant to clause 2(m)" of Rule XI of the Rules of the House of Representatives, which authorizes subpoenas "to require … the production of such books, records, correspondence memoranda, papers, and documents as it considers necessary."[2]

21. By its terms, the Committee's authorization to issue subpoenas is limited to the matters set forth in H. Res. 503, none of which conceivably includes Ms. Mitchell's work as a practicing elections lawyer in Georgia.

22. Despite the limitations imposed by H. Res. 503, on November 24, 2021, the Select Committee issued the Subpoena to AT&T requiring that it provide the following information related to Ms. Mitchell's cellular telephone number and account for the three-month period

---

[1] H. Res. 503, Establishing the Select Committee to Investigate the January 6th Attack on the United States Capitol, 117th Congress (available at https://www.congress.gov/117/bills/ hres503/BILLS-117hres503eh.pdf).
[2] Rules of the House of Representatives, 117th Congress, adopted February 2, 2021 (available at https://rules.house.gov/sites/democrats.rules.house.gov/files/117-House-Rules-Clerk.pdf).

November 1, 2020, through January 31, 2021:

<u>Subscriber Information</u>: All subscriber information for the Phone Number, including:

a. Name, subscriber name, physical address, billing address, e-mail address, and any other address and contact information;

b. All authorized users on the associated account;

c. All phone numbers associated with the account;

d. Length of service (including start date) and types of service utilized;

e. Telephone or instrument numbers (including MAC addresses), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEI"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identifiers ("IMEI") associated with the accounts;

f. Activation date and termination date of each device associated with the account;

g. Any and all number and/or account number changes prior to and after the account was activated;

h. Other subscriber numbers or identities (including temporarily assigned network addresses and registration Internet Protocol ("IP") addresses); and

<u>Connection Records and Records of Session Times and Durations</u>: All call, message (SMS & MMS), Internet Protocol ("IP"), and data-connection detail records associated with Phone Numbers, including all phone numbers, IP addresses, or devices that communication with the Phone Number via delivered and undelivered inbound, outbound, and routed calls, messages, voicemail, and data connections.

23. The records sought by the Select Committee include those evidencing communications that Ms. Mitchell had with her clients – both related and unrelated to the 2020 election – as well as personal communications with her family and friends. The Select Committee also seeks records of other users on Ms. Mitchell's account, which would require disclosure of information from Ms. Mitchell's husband's account.

24. Under cover of a letter dated December 2, 2021 (and received by Ms. Mitchell on December 4, 2021), AT&T provided Ms. Mitchell with a copy of the Subpoena and notified her that it intended to respond to the Subpoena on December 16, 2021, unless it received a copy of Ms. Mitchell's court filing contesting the Subpoena.[3]

25. The Subpoena comes on the heels of a letter dated August 30, 2021, whereby the Select Committee directed AT&T (and possibly as many as 34 other telecommunications and social media companies) to preserve customer information for the period April 1, 2020, through January 31, 2021.[4] The Committee has not publicly released the names of the account holders that were the subject of the preservation letters. The preservation requests included location data and the "[c]ontent of communications, including all emails, voice messages, text or SMS/MMS messages, videos, photographs, direct messages, address books, contact lists, and other files or other data communications stored in or sent from the account …."

26. On December 10, 2021, a Senior Investigative Counsel for the Select Committee confirmed to the undersigned counsel that the Subpoena does not seek the content of communications, or geo-location information. Committee Counsel also represented that the Select Committee has communicated those clarifications to AT&T. Nonetheless, even as clarified by Counsel, compliance with Subpoena would require the disclosure of call details that infringe on Ms. Mitchell's attorney-client communications, and which have no relationship to

---

[3] On December 15, 2021, Ms. Mitchell filed with this Court her Motion to Quash the Subpoena She forwarded a copy of that filing to AT&T, which then withheld its response to the Committee pending a decision by this Court. Ms. Mitchell corrected the form of her filing by withdrawing the Motion and replacing it with this Complaint. She has notified AT&T of the refiling of her challenge to the Subpoena.

[4] Ms. Mitchell learned of the August 30, 2021, letters from the media and assumes that she was included in the preservation requests because of the Committee's issuance of the Subpoena to AT&T.

the mission of the Select Committee as set forth in H. Res. 503. The Subpoena is, thus, an unwarranted intrusion on Ms. Mitchell's privacy and confidential attorney communications and should be quashed. On December 14, 2021, Ms. Mitchell requested that the Committee withdraw the Subpoena. The Committee declined that request.

## REASONS WHY THE SUBPOENA IS INVALID

Notwithstanding the Select Committee's clarification, Ms. Mitchell requests that this Court to quash the Subpoena for the reasons set forth below.

### A. The Subpoena is Overly Broad and Seeks Information that is Unrelated to the Select Committee's Investigation

27. Ms. Mitchell does not dispute the legitimacy of the Select Committee's investigation into the facts and circumstances surrounding the events at the United States Capitol on January 6, 2021. She acknowledges that the U.S. Court of Appeals for the District of Columbia Circuit recently affirmed the Committee's legitimate "legislative purpose" in *Trump v. Thompson, et al.*, D.C. Cir., Case No 21-5254 (December 9, 2021).[5] There are important differences between that case and the present controversy.

28. In *Trump*, the D.C. Circuit considered whether a former President could prevent the disclosure of official records by asserting executive privilege where the sitting President declined to assert that privilege over the records at issue. In that matter, the Select Committee and the sitting President agreed that Congress had "established that the information sought is vital to its legislative interests and the protection of the Capitol and its grounds," and the D.C. Circuit determined that the Select Committee "has also demonstrated a sound factual predicate for requesting" the former President's documents. *Id.* at 37, 42. The D.C. Circuit further noted

---

[5] The D.C. Circuit affirmed this Court's decision in *Donald J. Trump v. Bennie G. Thompson* (Civil Action No. 21-cv-2769 (TSC)).

that the former President brought suit "solely in his 'official capacity' as the '45th President of the United States'" and "does not assert that disclosure of the documents ... would harm any personal interests in privacy or confidentiality." *Id.* at 47. None of those factors is present here.

29. It is well established that Congressional subpoena authority is not unlimited. A congressional subpoena "is valid only if it is related to, and in furtherance of, a legitimate task of the Congress." *Trump v. Mazars*, 140 S. Ct. 2019, 2031 (2020) (remanding the D.C. Circuit's upholding of congressional subpoenas for President Trump's personal financial records to consider whether the information was available through other means, whether the subpoenas were sufficiently narrow, whether the subpoenas furthered, and the burden hat compliance would place on the President) quoting *Watkins v. United States*, 354 U.S. 178 (1957) (internal quotations omitted) (reversing a Contempt of Congress conviction for refusing to answer questions about knowledge of Communist Party members). "Congress may not issue a subpoena for the purpose of law enforcement because those powers are assigned under our Constitution to the Executive and the Judiciary." *Id.* quoting *Quinn v. United States*, 349 U.S. 155, 161 (1955) (internal quotations omitted) (similar to *Watkins*). "Congress has no general power to inquire into private affairs and compel disclosures." *Id.* quoting *McGrain v. Daugherty*, 273 U.S. 135, 179 (1927) (internal quotations omitted) (reversing a District Court order discharging from custody a subpoenaed witness who had failed to appear before a Senate committee). "There is no congressional power to expose for the sake of exposure." *Id.* quoting *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 506 (1975) (internal quotations omitted) (upholding a Senate subcommittee's subpoena to the bank of an organization in connection with its inquiry into whether the organization was harmful to the morale of the United States armed forces).

30. The Select Committee's Subpoena is not "related to, and in furtherance of, a

legitimate task of the Congress" and should be quashed.

31. The Subpoena seeks subscriber information and non-content records of all telephone calls and text messages from Ms. Mitchell's personal cellular telephone for the period from November 1, 2020, through January 31, 2021. Ms. Mitchell's legal work in Georgia during late 2020 and early 2021 was entirely lawful, protected under the First Amendment, and wholly unrelated to the events that took place in Washington, D.C., on January 6th or any other matter the Committee is authorized by H. Res. 503 to investigate. The Subpoena improperly intrudes into those activities and violates the protections and privileges Ms. Mitchell has as a citizen and as an attorney. Moreover, the Committee's demand for records of private communications is overly broad and calls for the production of information that is unrelated to its investigation.

32. During the period referenced in the Subpoena, Ms. Mitchell was engaged in constitutionally protected activity in furtherance of upholding and enforcing the statutes of the State of Georgia's Election Code, O.C.G.A. §§ 21-2-1 *et seq*. The Select Committee cannot demonstrate that the records it is seeking from AT&T would further its legislative mission, nor can it show that personal and professional communications for more than two months prior to January 6, 2021, and nearly a month after that date, are relevant to its authorized purpose.

**B. The Subpoena Violates Ms. Mitchell's Protections Under the First Amendment of the U.S. Constitution**

33. By seeking information about Ms. Mitchell's personal and professional communications, Chairman Thompson and the Committee are improperly attempting to obtain information about Ms. Mitchell's free speech and association activities that are protected by the First Amendment to the U.S. Constitution. Worse, the Chairman and the Select Committee are misusing their authority to investigate political adversaries, painting their opposition with a broad brush as insurrectionists and domestic terrorists. The Select Committee cannot

demonstrate a compelling justification that would justify this intrusion, and this Court should be particularly concerned when the records sought are those of a practicing attorney engaged in the lawful representation of her client.[6]

34. "It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute" an "effective restraint on freedom of association." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958) (compelling disclosure of membership in an organization engaged in advocacy of particular beliefs violated constitutional protections). Not only would such a requirement "affect adversely the ability of [an organization] and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate," but it might "induce members to withdraw from the Association and dissuade others from joining it because of the fear of exposure of their beliefs shown through their associations and of the consequences of this exposure." *Id*. at 462-63. *See also Bates v. Little Rock*, 361 U.S. 516, 523 (1960) (reversing convictions of NAACP records custodians who refused to provide the organization's membership lists to city officials); *Gibson v. Florida Legislative Investigation Committee*, 372 U.S. 539 (1963) (reversing a NAACP branch president's conviction for contempt for refusing to produce membership records to a state legislative committee). Where a required disclosure impacts a citizen's constitutional protections, the government must demonstrate a compelling interest if it wants to subordinate

---

[6] Ms. Mitchell does not contend that AT&T records, that do not disclose the *content* of communications, are protected by attorney-client privilege, or the attorney work product doctrine. However, even non-content details of attorney-client communications are sensitive by their nature and, at a minimum, deserving of protection against an overly broad subpoena. Ms. Mitchell submits that it is also entirely possible that some of the details of her communications with clients both related and unrelated to the 2020 election rise to the level of privileged communications, but she is unable to analyze those records without subscriber information. And, should the Select Committee obtain three months of Ms. Mitchell's records, there is nothing to prevent it from publicly releasing that information.

those protections. *NAACP*, 357 U.S. at 463.

35. Ms. Mitchell's cellular telephone and text message "call-detail" records are the modern-day equivalent of a membership list in that they would disclose detailed information about her communications with clients, senior Trump campaign officials, and campaign donors. It is no secret that the Select Committee includes political adversaries[7] of Donald Trump and, in the absence of a legitimate purpose, compelling the production of Ms. Mitchell's records could improperly disclose information to persons who are interested in making partisan points or harassing Ms. Mitchell.

36. Ms. Mitchell's First Amendment protections outweigh any interest the Select Committee may have in obtaining three months of her cellular records from AT&T. She takes no issue with the Committee's investigation of the attack on the Capitol, as well as the circumstances surrounding that disturbing event. However, there are no facts to suggest – and the Select Committee cannot assert any – that Ms. Mitchell had any role in what happened there or otherwise engaged in efforts to interfere with the peaceful transfer of power to the Biden administration. Absent such a showing, the Committee lacks a compelling interest, or any interest, in obtaining records that contain information about constitutionally protected activities, let alone Ms. Mitchell's unrelated private communications with clients, friends, and relatives.

---

[7] *See, e.g.,* Barbara Sprunt, *Here are the 9 Lawmakers Investigating the Jan. 6 Capitol Attack*, National Public Radio, July 27, 2021 (available at https://www.npr.org/2021/07/27/1020713409/here-are-the-9-lawmakers-investigating-the-jan-6-capitol-attack); Melanie Zanona *et al.*, *Liz Cheney and Adam Kinzinger prepare for blockbuster hearing amid attacks from their own party*, CNN, July 27, 2021 (available at https://edition.cnn.com/2021/07/26/politics/liz-cheney-adam-kinzinger-republican-attacks/index.html).

## C. The Subpoena Violates Ms. Mitchell's Protections Under the Fourth Amendment of the United States Constitution

37. The Subpoena also constitutes an unreasonable search and violates Ms. Mitchell's right to be secure in her person, papers, and effects under the Fourth Amendment of the United States Constitution. Where an individual has a reasonable expectation of privacy, "official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause." *Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018) citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979). In *Carpenter*, the U.S. Supreme Court held that the government must obtain a warrant to obtain an individual's cell-site location information. In so doing, the Court declined to extend the reasoning of its earlier decisions in *Smith* and *United States v. Miller*, 425 U.S. 435 (1976) to the government's collection of cell-site location information. In *Miller*, the Court rejected the argument that a government subpoena to Miller's bank seeking his banking records violated the Fourth Amendment. *Smith* extended that reasoning to reject a Fourth Amendment challenge to the government's use of a pen register that recorded outgoing phone numbers dialed on a landline telephone. In both cases, the Court declined to find a reasonable expectation of privacy in information that was in the possession of a third party (*i.e.*, the bank and the phone company). The decisions held, therefore, that the government's collection of that information therefore was not a search for purposes of the Fourth Amendment. In declining to extend that reasoning by requiring a warrant for cell-site location information in *Carpenter*, the Court noted the vast amount of information associated with modern communications and clarified that "[t]he fact that the government obtained the information from a third party does not overcome [a] claim to Fourth Amendment protection." *Id.* at 2219.

38. The Select Committee has clarified that it is not seeking the content of phone calls, text messages, or geolocation information, although the Internet Protocol ("IP") address information sought by the Subpoena might disclose Ms. Mitchell's location information when she connected to various Wi-Fi networks. At a minimum, the extensive information sought by the Subpoena – such as the names or all users associated with the account, the activation and termination dates of each device associated with the account, and all phone numbers, IP addresses, or devices that communicated with her phone number – dwarf the type of information obtained by a pen register in *Smith* in 1979.

39. Ms. Mitchell submits that the information sought by the Select Committee is more akin to the cell-site data that was the subject of the Supreme Court's decision in *Carpenter*, that she has a reasonable expectation of privacy in that information, particularly as an attorney, and that the Select Committee's demand for that information is a "search" under the Fourth Amendment that can only be obtained with a judicially approved warrant.

**D. The Subpoena Violates Federal Law**

40. The Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.,* prohibits an electronic service provider like AT&T from knowingly divulging "a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications …) to any governmental entity." 18 U.S.C. § 2702(a)(3).[8] The law provides exceptions that allow for the disclosure of non-content customer records under certain conditions, including where a "governmental entity" obtains a judicial warrant or "an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury

---

[8] The Stored Communications Act also prohibits the disclosure of the contents of communications. Our discussion here is limited to the Act's provisions pertaining to non-content information.

or trial subpoena …" 18 U.S.C. §§ 2702(c)(1), 2703(c).

41. The statute defines the term "governmental entity" as "a department or agency of the United States or any State or political subdivision thereof." 18 U.S.C. § 2711(4). The definition does not include the U.S. Congress. It is not as though Congress was unaware of the need to include itself in the definition of a criminal statute if it wanted the definition to apply to itself. During the Iran-Contra prosecutions in the early 1990s, former National Security Advisor John Poindexter argued that his convictions for making false statements to Congress under 18 U.S.C. § 1001 should be vacated because that statute prohibited false statements made "in any matter within the jurisdiction of any department or agency of the United States," and that the phrase "department or agency" did not include Congress. *See United States v. Poindexter*, 951 F.2d 369, (D.C. Cir 1992); *Hubbard v. United States*, 514 U.S. 695 (1995) (reversing a conviction based on a false statement to a court and discussing in dicta the application of 18 U.S.C. § 1001 to Congress).

42. While the D.C. Circuit was not "persuaded to carve out a broad legislative function exception to § 1001," Congress amended that statute in 1996 to remove any uncertainty by applying the law to false statements made "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." P.L. 104-292 (104th Congress). The Stored Communications Act has been with us since 1986. If Congress wished to include itself in the Act's "governmental entity" exceptions to the general prohibition against disclosing information, it certainly could have done so as it did in the context of 18 U.S.C. § 1001.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants and to order the following relief:

a. A declaratory judgment that the Select Committee's Subpoena to AT&T for Plaintiff's records is ultra vires, unlawful, and unenforceable;

b. A declaratory judgment that the Select Committee's Subpoena to AT&T for Plaintiff's records serves no valid legislative purpose and exceeds the Select Committee's Constitutional authority;

c. A declaratory judgment that the Select Committee's Subpoena to AT&T violates Ms. Mitchell's First Amendment Rights;

d. A declaratory judgment that the Select Committee's Subpoena to AT&T violates Ms. Mitchell's Fourth Amendment Rights;

e. A declaratory judgment that the Select Committee's Subpoena to AT&T would require Verizon to violate the Stored Communications Act;

f. An Order quashing the Select Committee's Subpoena to AT&T and prohibiting its enforcement by Defendants;

g. An injunction prohibiting Defendants from imposing sanctions for noncompliance with the Select Committee's Subpoena to AT&T;

h. An award in favor of Plaintiff for her reasonable expenses, including attorneys' fees and costs, incurred as a result of the Select Committee's Subpoena to AT&T; and

i. Any other relief to which Plaintiff is entitled that the Court deems just, proper, and equitable.

February 1, 2022                             Respectfully submitted,

                                               <u>/s/  John P. Rowley III</u>
                                               John P. Rowley III
                                               JPROWLEY LAW PLLC
                                               DC Bar No. 392629
                                               1701 Pennsylvania Avenue, NW, Suite 200
                                               Washington DC 20006
                                               john.rowley@jprowleylaw.com
                                               Telephone: 202 525 6674

                                               *Counsel for Plaintiff Cleta Mitchell*